# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2025-EC-00299-SCT

*UNSHAY RANDLE*

*v.*

*TOMMIE IVY, SR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/10/2025 |
| TRIAL JUDGE: | HON. DAVID ANTHONY CHANDLER |
| TRIAL COURT ATTORNEYS: | ROBERT H. FAULKS |
| | WALTER HOWARD ZINN, JR. |
| COURT FROM WHICH APPEALED: | CHICKASAW COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WALTER HOWARD ZINN, JR. |
| ATTORNEY FOR APPELLEE: | ROBERT H. FAULKS |
| NATURE OF THE CASE: | CIVIL - ELECTION CONTEST |
| DISPOSITION: | AFFIRMED - 03/12/2026 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This appeal is about whether a primary-election candidate met the two-year residency qualifications to appear on the primary ballot.  We conclude that substantial evidence supported the special judge's decision that the candidate did not meet the residency requirements.  While that answer is simple, the procedural history of this case is not.

¶2.     In short, the candidate asks this Court to resolve a preprimary-qualifications dispute. Meanwhile, both the primary and general elections have already occurred.  And the statute under which the candidate maintains his appeal—a statute only governing challenges to a candidate's preprimary qualifications—has no remedy for a candidate after the primary and general elections.  So this Court cannot give the candidate the remedy he seeks.  Because

election contests are governed by different statutes at different stages of the election process, maintaining an appeal under a preprimary-qualification statute *after* the elections cannot change the outcome of the race.

¶3.     All of this aside—and even though the candidate's preprimary appeal has become moot after the elections—the special judge made the right call when he disqualified the candidate before the primary. The candidate clearly did not meet the residency requirements. So we affirm.

**Facts and Procedural History**

**I.      The Primary-Election-Qualification Dispute**

¶4.     Unshay Randle filed a qualifying statement of intent on January 2, 2025, to run in the Democratic primary for Okolona city marshal. He listed his address as 112 South Buckingham Street, Okolona, Mississippi—within the city limits.[1]

¶5.     Randle's primary opponent, Tommy Ivy, Sr., did not believe Randle actually lived on Buckingham Street. In fact, he claimed Randle did not live in the city at all. So Ivy filed a petition with the Okolona city clerk to contest Randle's qualifications in the primary election. Specifically, Ivy asserted Randle had not lived in the city limits for two years before the election as required by statute. Ivy served his petition and supporting papers on members of the Okolona Democratic Executive Committee (DEC) on February 10, 2025. And the DEC met on February 17, when its members determined Randle met the residency requirements for city marshal. Ivy then petitioned the Chickasaw County Circuit Court to review the

---

[1] A candidate for municipal office must reside within the municipality for two years immediately preceding the day of election. Miss. Code Ann. § 23-15-300(1) (Supp. 2025).

DEC's decision.

¶6. In his petition, Ivy cited Section 23-15-300's two-year residency requirement. Ivy also alleged that Randle had 2024 homestead-property exemptions on land parcels outside the Okolona city limits. According to Ivy, Randle's county homestead properties demonstrated Randle had not resided within the city for two years preceding the 2025 election. So Ivy sought the court's review of what he saw as the DEC's erroneous decision that Randle was a qualified candidate.

¶7. This Court appointed Special Circuit Judge David A. Chandler to preside over Ivy's petition. The special judge set a hearing date for March 6, 2025. The morning of the hearing, Randle filed his answer to Ivy's petition for judicial review. In his answer, Randle agreed the two-year residency requirement applied. But he disagreed he had lived outside the city during that time.

¶8. At the hearing, Randle testified that he had lived in the Okolona city limits for two years as required of a primary candidate. He told the court that he had rented a house from his cousin from September 2022 until September 2024 while the 112 South Buckingham Street home listed on his qualifying statement was under construction. That rental location—123 McDonnell Street—is within the Okolona city limits. Randle recounted that he moved from 123 McDonnell Street to 112 South Buckingham Street in September 2024. To support his claims, Randle presented a short lease agreement for 123 McDonnell Street and other documents like voter registration.

¶9. Ivy contested Randle's residency. Ivy presented evidence that Randle held homestead

3

property outside the city limits. And he cast doubt on Randle's claim that he had lived in the city since September 2022. Ivy called Okolona building-code-enforcement officer Shane Davis. Davis testified about his involvement with the home Randle began building at 112 South Buckingham Street in 2023. Davis had conducted periodic inspections of the home during construction. On January 8, 2025, he noticed two vehicles parked at the home. The vehicles were notable to Davis because he had not performed a final inspection of the structure nor issued an occupancy approval certificate. Davis contacted Randle later that day and reminded him that nobody could lawfully occupy the home before a final inspection. In response, Randle assured Davis that no one was living at 112 South Buckingham Street—the vehicles were merely there for security purposes.

¶10. But at the hearing, Randle disputed that he told Davis no one was living at 112 South Buckingham Street on January 8. He maintained that he had been living there since moving out of 123 McDonnell Street. He also testified that his homestead properties in the county were for tax purposes, not for his residence.

¶11. Ivy's counsel questioned Randle about how had he lived at 112 South Buckingham Street for several weeks before paying the deposit to turn on municipal water in December. Randle claimed he had used the water hookup for pressure checks in the home before paying the municipal-water deposit.

¶12. At no point in the hearing did Randle dispute the two-year residency requirement for a primary candidate. Nor did he argue that anything other than Section 23-15-300 governed residency requirements.

4

¶13. In his March 10, 2025 order, the special judge determined Randle failed to overcome the homestead-property presumption that he resided outside the Okolona city limits during the two-year residency period. The judge was suspicious that Randle presented no witness testimony—other than his own—to establish that he ever lived at the 123 McDonnell Street rental or 112 South Buckingham Street before the qualifying deadline. The special judge also found Davis's inspection-based testimony particularly credible to establish no one lived at 112 South Buckingham Street as late as January 8, 2025. And he noted that no certificate of occupancy had been issued as of the March 6 hearing. The judge gave little credence to Randle's explanation about water access at 112 South Buckingham Street before paying for municipal water in December. In sum, the judge found Randle failed to demonstrate he lived within the city of Okolona for two years prior to the election.

¶14. Randle timely appealed the special judge's order finding him unfit as a primary candidate by filing a notice of appeal in the circuit court on March 13.[2]

## II. Appellate Motions Before Primary Election

¶15. Randle's March 13 appeal—the only appeal currently before this Court—concerns his residency qualifications for the Democratic primary ballot. Challenges to primary election qualifications are governed by Section 23-15-961. And when the determination of a special

---

[2] Ivy contends in his brief that Randle's appeal is untimely because his notice of appeal and bill of exceptions were not transmitted to this Court until the fourth day after the special judge entered his order. And Mississippi Code Section 23-15-961(3) only allows appeals until the third day. Miss. Code Ann. § 23-15-961(3) (Supp. 2025). Because Randle filed his notice of appeal in the trial court on the third day, however, the transmission delay from the trial court to this Court does not deprive this Court of jurisdiction. Therefore, Randle's appeal is timely.

judge is appealed to this Court from a Section 23-15-961 challenge, the filing of the appeal "shall automatically suspend the decision of the circuit court and the appropriate executive committee is entitled to proceed based upon their decision" unless this Court intervenes. § 23-15-961(3). In other words, Randle's appeal on March 13 stayed the special judge's decision that he was unqualified. So under the statute, the primary election should have happened on April 1 with Randle on the ballot unless this Court affirmed the circuit court's decision prior to the primary election. But that did not happen. From the record, it appears that Randle's name was never actually on the primary ballot though filings in this Court made before the primary election are unclear on that point.

¶16. On March 18, Ivy filed a motion asking this Court to delay the primary election. He was concerned that the primary would happen with Randle on the ballot despite the special judge's ruling. Ivy also expressed concern with the March 17 resignation of four acting members of the Okolona DEC. Based on Ivy's motion, this Court called for a response from Randle. And Randle's response represented that the city clerk told Randle's counsel he would be on the primary ballot. So Randle asked this Court to deny Ivy's motion and continue with the April 1 primary election. On March 25, this Court denied Ivy's motion to stay.

¶17. On March 28, Randle filed a lengthy motion seeking relief from the impending election. Randle detailed a March 26 email his counsel received from a group alleging to be the Okolona DEC. In the email, the purported DEC stated that it had voted to uphold the circuit court's ruling that Randle was unqualified. The email further requested Randle be

6

removed from the ballot. Though viewing the record as a whole, it appears Randle was never on any primary ballot. And his motion does not make that fact apparent. In fact, his motion included a previous assurance from the city clerk on March 14 that he would be on the ballot. Furthermore, this Court could not examine evidence to determine whether Randle was or was not on any primary ballots. The same day Randle filed his motion, this Court dismissed it.

¶18. After this Court also denied Ivy's motion to dismiss the appeal entirely, the primary election occurred on April 1, 2025.

### III. The Postprimary-Election Challenge

¶19. After the primary election, very little happened in the record of this Section 23-15-961 appeal. And Randle seemed to switch gears. At that point, he began to challenge the results of the primary under Mississippi Code Section 23-15-927 (Rev. 2018).

¶20. Randle filed his petition in a second action on May 1, 2025. The crux of Randle's allegation was that unelected members of the Okolona DEC—who replaced the DEC members that resigned on March 17—fraudulently acted to hold the Democratic primary for city marshal without Randle appearing on the ballot. According to Randle, none of the acting DEC members had been elected or otherwise lawfully held their positions. And Randle alleged the DEC composed of unelected members lacked authority to hold the election at all, much less without Randle appearing on the ballot.

¶21. To preside over Randle's primary-election challenge, this Court again appointed Judge Chandler as special judge. Reviewing Randle's challenge, the circuit court found it lacked jurisdiction. The special judge issued his judgment in Randle's postprimary challenge on

7

June 26 after the general election for city marshal had already taken place on June 3.

¶22. Randle never appealed the circuit court's June 26 final judgment. And the time to do so has since passed. Furthermore, we can find nowhere Randle challenged the outcome of the general election, which Ivy won. So this Court lacks appellate jurisdiction over the special judge's June 26 ruling in the postprimary-election contest.

¶23. While much of this procedural history is confusing and unusual, the appeal before us is not. In short, the only appeal before this Court is the special judge's initial March 10 ruling that Randle was unqualified as a candidate in the primary election by failing to meet the two-year residency requirement.

**Discussion**

¶24. In appealing the determination that he had not met the residency requirements for the primary election, Randle asks this Court to find him qualified as a primary-election candidate. And he asks us to order a special election for Okolona city marshal. But an appeal under Section 23-15-961 does not allow for a special election as a remedy. And after an election, any action challenging a primary candidate's qualifications becomes moot. Other statutes govern how to challenge an election that has already happened. Still, we find a discussion on the merits is warranted to show Randle suffered no harm by not appearing on the primary ballot. Because the special judge heard substantial evidence that Randle did not meet the residency requirements, we affirm the circuit court's finding.

I.      **Section 23-15-961 does not allow for this Court to call a special election.**

¶25. Randle asks this Court to call a special election for Okolona city marshal. But the

statute under which Randle appealed—Section 23-15-961—does not provide a special election as a remedy for a primary election candidate. Section 23-15-961 only concerns challenges to "the qualifications of . . . a candidate for nomination in a political party primary election . . . ." Miss. Code Ann. § 23-15-961(1) (Supp. 2025). So Randle has pursued an appeal under the wrong statute in his quest for a special election.

¶26.    "Election contests are a statutory remedy." *Andreacchio v. Coleman*, 322 So. 3d 441, 445 (Miss. 2021) (citing *Pradat v. Ramsey*, 47 Miss. 24, 32 (1872)). "[E]ach statute governs a particular *type* of election challenge." *Id.* For example, challenges to a political party's determination of a candidate's qualifications are made under Section 23-15-961. *Andreacchio*, 322 So. 3d at 445. After a primary election, challenges made to that election must be made under Mississippi Code Section 23-15-921 (Rev. 2018). *Andreacchio*, 322 So. 3d at 445. And challenges to a general election must be made under Mississippi Code Section 23-15-951 (Supp. 2025). *Andreacchio*, 322 So. 3d at 445.

¶27.    Because Randle abandoned his challenge to the primary election under Section 23-15-927 by not appealing the special judge's June 26 ruling, this Court lacks jurisdiction to review that election. And because Randle never challenged the results of the general election, this Court cannot review that election either. So the only issue properly before us is the preprimary determination that Randle was unqualified as a primary candidate, which Randle appealed on March 13. And the statutory mechanism for reviewing that determination—Section 23-15-961—does not empower this Court to grant Randle a special election. Randle should have either appealed the circuit court's June 26 order or challenged

9

the outcome of the general election under Section 23-15-951. Simply put, Randle jumped in the wrong vehicle, hoping it would take him to a special election.

¶28. Furthermore, any review of Randle's preprimary qualifications under Section 23-15-961 would have no effect since both the primary and general elections have already occurred. "After a party nominee has been elected to public office, the election may be challenged *as otherwise provided by law*. After a party nominee assumes an elective office, his qualifications to hold that office may be contested *as otherwise provided by law*." Miss. Code Ann. § 23-15-961(4) (Supp. 2025) (emphasis added).

¶29. Because Section 23-15-961 does not allow for special election as a remedy after the primary and general elections have been held, this Court cannot grant Randle a special election under that statute—the only one under which Randle maintains an appeal. Further, because the primary and general elections have been held, any substantive review of Randle's Section 23-15-961 appeal is moot.

> **II. The trial court did not abuse its discretion by finding Randle unqualified.**

¶30. Randle also loses on the merits. Substantial evidence supported the special judge's March 10 determination that Randle was unqualified as a primary candidate by failing to satisfy the two-year residency requirement.

¶31. On the merits of his appeal, Randle argues (1) Okolona's special charter controls residency qualifications instead of the two-year requirement found in Section 23-15-300, and (2) Randle met the thirty-day residency requirement under Okolona's special charter to be a qualified candidate. But Randle never raised the first argument before the trial court—that

10

the special charter controls the residency requirement—so it is waived. And his second argument has no leg to stand on because this Court cannot consider the applicability of Randle's waived argument. Even so, the judge found Randle failed to show that he lived in the Okolona city limits for two years before the election.

### A.    Randle's argument is waived.

¶32.    At no point during the March 6 hearing did Randle argue that Okolona's special charter controlled the residency requirement rather than the Section 23-15-300 two-year requirement. In fact, his answer filed just before the hearing affirmed Ivy's contention that the required residency period was two years. And the special judge noted in his March 10 order that "[i]t was uncontested at the hearing that a candidate must have lived in the city limits of Okolona, for two years immediately preceding the date of the election for the elected position of City Marshall [sic]." Randle's waiver of his argument about the thirty-day residency provision in Okolona's special charter precludes him from bringing it up for the first time on appeal.

¶33.    For this same waiver-based reason, Randle's contention that he actually met the thirty-day requirement of the special charter cannot be considered by this Court. Indeed, we could affirm the special judge's March 10 order on that basis alone. But we find a discussion of the merits helpful because it clearly shows the special judge did not err by finding Randle did not meet the two-year residency requirement.

### B.    The special judge's March 10 order was not manifest error.

¶34.    This Court reviews Section 23-15-961 challenges to a primary candidate's

11

qualifications for manifest error. ***Shows v. Garner***, 360 So. 3d 962, 970 (Miss. 2023) (quoting ***Meredith v. Clarksdale Democratic Exec. Comm.***, 340 So. 3d 315, 321 (Miss. 2022)). "A circuit court judge sitting as the trier of fact is given the same deference with regard to his fact finding as a chancellor, and his findings are safe on appeal when they are supported by substantial, credible, and reliable evidence." ***Id.*** (internal quotation marks omitted) (quoting ***Meredith***, 340 So. 3d at 321).

¶35. The special judge heard sufficient evidence that Randle had not lived in the city of Okolona for two years prior to the election. Randle presented no witnesses that he lived at 123 McDonnell Street beginning in September 2022. The water-deposit issue cut against Randle. And the special judge found building-code-enforcement officer Davis more credible than Randle. According to Davis, Randle claimed nobody was living at 112 South Buckingham on January 8, 2025. And as of the March 6 hearing, a certificate of occupancy had not been issued for 112 South Buckingham Street. Thus, substantial evidence supports the special judge's finding that Randle had not lived in Okolona for two years before the election.

**Conclusion**

¶36. In an unusual and confusing election appeal, we were asked after the general election to determine whether Randle met the residency requirements for a primary election. Randle was never on the primary-election ballot and apparently was not on the general-election ballot either. But the error of excluding Randle from the primary ballot was ultimately harmless because substantial evidence supports the special judge's determination that he did

12

not meet the two-year residency requirement.

¶37. Furthermore, Randle's challenge to his residency qualifications is lodged under a statute that only governs preprimary-election challenges. And he abandoned any appeal he could have had after the primary or general elections by failing to timely seek review. Because his current appeal under Section 23-15-961 is moot by virtue of the primary having already happened, this Court cannot grant a special election under that statute. Randle failed to pursue a challenge either to the primary or general elections. But even if he had, he was ultimately unqualified as a primary candidate because substantial evidence supported the special judge's determination Randle had not met the two-year residency requirement.

¶38. Therefore, we affirm the circuit court's decision that Randle was not a qualified primary candidate.

¶39. **AFFIRMED.**

**RANDOLPH, C.J., COLEMAN, P.J., ISHEE, GRIFFIS, SULLIVAN AND BRANNING, JJ., CONCUR.**